OPINION OF THE COURT
J. Emmett Murphy, J.
This is a summary proceeding to recover possession of a *694 residential apartment based upon nonpayment of rent. The petition, returnable October 3, alleges two months’ nonpayment of the monthly rental of $546.
Respondent agrees to the amount and admits nonpayment. She submits lists of code violations and asserts breach of the warranty of habitability. The lists are the results of inspections by city inspectors and the Division of Housing and Community Renewal.
Petitioner requests that the two months’ rent be deposited into court prior to trial. Respondent agrees to this.
Neither side requests an early trial. Petitioner wishes to inspect and repair as necessary. This will remedy his alleged code violations and increase the possibility of amicable settlement. Respondent also prefers to have the repairs done while the case is pending, under the added impetus of monitoring by the court and court review upon completion. She does not wish to live in substandard conditions for a reduced rent. From petitioner’s point of view, the escrow secures possible judgment. From respondent’s point of view, the escrow substitutes a fund for possession of her apartment, limits if not eliminates the risk of eviction, demonstrates her good faith in nonpayment, and completely redirects the thrust of the case, from nonpayment to nonrepair.
Adjournment of the trial is granted to October 24th at 9:30 a.m. in Part II. Tenant is directed to pay the escrow into court by October 10th, which she says she is able to do.
Petitioner’s attorney requests that the court retain the escrow and direct the clerk not to forward the fund to the County Treasurer. He states that such forwarding greatly increases the formality and expense of securing payment, injects considerable delay in refund, may necessitate a trip to the City of White Plains in the event of error or uncertainty, and subjects his client to a 2% reduction in rent collected because of an unnecessary fee. After hearing petitioner’s arguments, respondent joins in the request, noting that, in light of the possibility of reduction based on habitability, she may well be entitled to partial refund, and would rather deal with a court in Yonkers than the Treasurer in White Plains.
Whether viewed as a stay of proceedings conditioned upon escrow pursuant to RPAPL 755, or merely an adjournment of trial for good cause shown upon terms and conditions as the court deems just pursuant to UCCA 1302, such escrows have long been ordered in summary proceedings in a substantial *695 number of local courts. The amounts placed in escrow are relatively small and the escrow periods usually 1 or 2 weeks. Even. at the unrealistically high short-term interest rate of 10%, the fund would only generate .5% in three weeks, and would have to be invested over two months to reach a 2% return.
Because the courts generate larger fine and bail accounts, the banks have for years provided the small, short-term escrow accounts with checks and record-keeping services without service charges to the courts. This court has kept such accounts since its early years, as have other local courts throughout the State, with the approval of the Comptroller of the State of New York, to whom such accounts and funds are reported at least annually.
In practice, the courts decide cases and notate an order to the clerk to issue appropriate checks to satisfy the judgment, without delay or diminution for fees. The checks are mailed to or picked up by attorneys and parties. Appropriate internal records are kept, and periodically audited.
Recent administrative memoranda discourage this practice, and the court began directing landlords’ attorneys to hold such funds in escrow. Well-reasoned arguments advanced by Westchester Legal Services, attorney reluctance, and the inevitable suspicions of tenants despite explanation, have convinced the court of the infirmity of this system, which in any event is usually not available in small claims escrows.
The memoranda attempting to effect a uniform policy with regard to these funds and accounts have focused on subdivision (b) of CPLR 2601, a provision of law which has long been substantially in effect, since a time well prior to, for example, the statutory creation of the Office of Court Administration. This subdivision provides in relevant part that, when the clerk receives funds paid into court, "he shall deliver them to the county treasurer within two days after he receives them.” The word "shall”, addressed to the receiving clerk, has apparently been interpreted as divesting the court of all discretion in the matter, and as destructive of its power to order otherwise. This despite the fact that the court’s discretionary power over the fund immediately reappears intact in subdivision (d) of the same section, which empowers the court to order the County Treasurer to transfer the fund back if the court deems it proper in any case. We are thus left with the anomaly that the court may tell the County Treasurer where to transfer the funds, but not the court clerk.
*696 The memoranda opine that "[t]he courts themselves are proscribed from retaining any Article 26 funds for more than two days”, that there is no authority for the escrow accounts, and direct that, "[e]ffective immediately all new trust funds paid into court * * * are to be turned over to the County Treasurer * * * within two (2) days of receipt” (emphasis in original). They add that the escrow bank accounts are to be closed, apparently to enforce their interpretation that the court may not use them.
While the direction to the clerk to pay escrow funds over to the County Treasurer for investment by him, within two days, makes eminent good sense in the case of large funds, or those known to be held for potentially substantial periods of time, it runs contrary to good sense to apply such rule mechanically to small escrows held for brief periods.
Under the proposed new system, the clerk receives an escrow check, makes his usual records of it and then, instead of segregating it in the smaller account, he is to deposit it in with the bail funds. After watching this account closely for 4 or 5 days, he detects that the check has cleared. He then draws a court check, fills out a new set of detailed forms, makes, and seals, a copy of the order directing escrow, attaches the appropriate postage, and sends the package off to White Plains. When, in due course, the mail arrives in the appropriate office, the Treasurer’s staff will, after appropriate recording of the details of its receipt, doubtless deposit this second check to await its clearance.
In a summary proceeding, it would not be unlikely that the Yonkers clerk would, at about this time, be advised by the court as to the proper disposition of the funds, and begin another set of forms for mailing to the Treasurer. The court is not aware of any peremptory requirement that the Treasurer pay out within two days of receipt of the order with forms, and is informed that the record keeping engenders substantial delay.
If no delay occurs, and the fund is disbursed expeditiously, 2 NYCRR 70.11 (a) (2) provides that "no interest shall be payable on monies withdrawn within 30 days from the date of deposit.” The 2% fee is charged nevertheless.
While the courts will not lightly exercise their power to interpret words peremptory in form as directory only, where
"it is evident from the entire act construed as a whole and from the surrounding circumstances that peremptory lan *697 guage was not intended to receive a peremptory construction, it may be construed as directory only. In such a case the term ’must’ or ‘shall’ will be interpreted in the sense of ‘may,’ particularly where no right or benefit to anyone depends on its use as an imperative word.
‘‘Such a construction is frequently employed in connection with statutes affecting judicial duties where a contrary interpretation would foreclose all judicial discretion.” (McKinney’s Cons Laws of NY, Book 1, Statutes § 177 [c].)
"[Statutes must be construed in the light of common sense” (id., § 143, at 286). "[T]he construction to be adopted is the one which will not cause objectionable results, or cause inconvenience, hardship, injustice, mischief, or absurdity.” (Id., § 141, at 281.)
The Legislature appears to have been specifically mindful of such possibilities in the area of escrows. Section 182 of the State Finance Law authorizes County Treasurers to invest the funds throughout the State, but adds that they are to be kept in the county of origin "where it can be done conveniently and safely and with advantage to the parties interested.” Application of this same standard to short-term escrows requires that they not be subjected to automatic, unnecessary and unhelpful transfers.
The three reasons advanced in the memoranda as to why "it makes sense” to insist on automatic transfers have no application to short-term escrows. That "the county treasurer acts independently of the courts” is not an advantage. "Investment expertise” is irrelevant to funds kept under 30 days, since no interest is paid on them, and where a second check must be mailed and cleared after clearing the original, it is doubtful "receipt of the funds” would be acknowledged within the first 10 business days. That the Treasurer "is authorized to collect a fee” of 2% operates against the convenience and advantage of the parties interested in the funds.
The court concludes that proper construction of CPLR 2601 (b) does not lead to the conclusion that the court has no discretion over escrow funds. Rather, implementation of the clear legislative intent requires only that long-term escrows be transferred for investment with dispatch, and forbids the automatic transfer of short-term escrows to the inconvenience and disadvantage of the parties interested in such funds.
Accordingly, the application of petitioner, consented to by respondent, is granted. The clerk is directed to accept such *698 escrow fund and deposit it in the court account maintained for such purpose, and not to transfer it to the County Treasurer or bail account without further court order. Similar deposits are to be accepted from time to time and maintained as directed by court order. The court will decide, on a case-by-case basis, which funds are appropriate for transfer to the County Treasurer, which transfers shall then be effected without unnecessary delay. Since the decision whether to transfer funds to this account must be made in the court’s discretion, as it deems proper, the court directs that the clerk maintain such account subject to the further order of the court.